IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Case No. 1:20-bk-02164-HWV |
| EAST SHORE AUTO, INC. | Chapter 7 |
| Debtor | |
| AUTO TRAKK, LLC | ADV. PRO: 1:20-AP-00067-HWV |
| Plaintiff | |
| v. | |
| EAST SHORE AUTO, INC., LEON P. HALLER (CHAPTER 7 TRUSTEE), AND DEALER RESOURCES, LLC | 11 U.S.C. § 506 – Secured Status |
| Defendants | |

## MEMORANDUM OPINION

This matter comes before the Court on the Plaintiffs' *Complaint to Determine Secured Status and Sale of Vehicles* brought pursuant to 11 U.S.C. § 506 (AP Docket #1[1]). On November 14, 2021, the Court conducted a bench trial in this matter. At the conclusion of trial, the Court took the matter under advisement. The Court has since reviewed the testimony, exhibits, and post-trial briefs and is prepared to rule.

I.   **JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Chief Judge Christopher C. Conner of the U.S. District Court for the Middle District of Pennsylvania and dated September 11, 2000. This is

---

[1] References to the adversary proceeding docket will be cited as AP Dkt #XX. References to the underlying bankruptcy docket will be cited as Dkt. #XX.

a "core proceeding" under 28 U.S.C. § 157(K)(determinations of the validity, extent, and priority of liens).

II.  FACTS[2] AND PROCEDURAL POSTURE

The Plaintiff in this matter is Auto Trakk, LLC ("Auto Trakk" or "the Plaintiff"), a Pennsylvania limited liability company. The Defendants are (1) East Shore Auto, Inc. ("East Shore" or "the Debtor"), the now-defunct Pennsylvania corporation that filed the underlying Chapter 7 case; Dealer Resources, LLC ("Dealer Resources"), a Pennsylvania limited liability company; and Leon P. Haller, the Chapter 7 Trustee ("the Trustee") assigned to the underlying bankruptcy case who is named only in his official capacity. All claims against the Debtor and the Trustee have been resolved,[3] which places this adversary proceeding in the unusual posture of being a conflict between two creditors arising from the Debtor's prepetition conduct but one in which the Debtor itself is no longer involved.

The facts are not in dispute and, based on the stipulations in the Pretrial Order (Dkt. # 17) and the testimony adduced at trial, can be summarized as follows: Before its liquidation, East Shore was in the business of buying and leasing automobiles. In furtherance of that business, the Debtor was a party to two separate contractual arrangements. First, the Debtor had an ongoing "floor plan financing" arrangement[4] ("the Dealer Resources Agreement") with Dealer Resources whereby East Shore would purchase cars at auction and Dealer Resources would finance the purchases and take a lien on each purchased vehicle as inventory. There is no dispute that Dealer

---

[2]To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.
[3]Neither the Debtor nor the Trustee answered the Complaint, and the remaining parties agree that there are no remaining claims against either of them.
[4]"Floor plan financing" refers to "a loan made to an automobile dealer to finance its inventory, which is then secured by liens on the dealer's inventory." *Auto. Fin. Corp. v. DZ Motors, LLC*, 2021 WL 1380605, at *1 (D.N.J. Apr. 9, 2021),

Resources properly filed UCC-1 financing statements for all vehicles purchased by East Shore through this arrangement and that Dealer Resources' liens were fully perfected.

Pursuant to the second contractual arrangement ("the Auto Trakk Agreement"), East Shore would locate prospects who would lease vehicles from its dealership and then sell both the vehicle and the lease agreement to Auto Trakk[5], which would then service the lease agreement and retake possession of the vehicle upon termination of the lease. While not a provision in the Auto Trakk Agreement, it was apparently understood by the Plaintiff that East Shore would use the money paid to it by Auto Trakk for purchase of a vehicle to pay off any outstanding lien on that vehicle before transferring title to Auto Trakk. Importantly, the parties stipulate that "Auto Trakk was unaware the purchase of the Vehicles violated any agreement between the Debtor and [Dealer]." *Dkt. #17 at ¶ 9*.

In the end, Auto Trakk's understanding as described above was incorrect, at least regarding the five vehicles[6] at the heart of this dispute ("the Vehicles"). Prior to the commencement of the bankruptcy case, Auto Trakk purchased the Vehicles from East Shore between November 25, 2019, and January 8, 2020, but East Shore neither satisfied Dealer Resources' liens on the Vehicles nor arranged for title to be conveyed to Auto Trakk as was required by guarantees in the Auto Trakk Agreement. While not factually developed at trial, Dealer Resources flatly states in its post-trial brief that the Debtor's principal, Sean Davis, has been criminally charged for his mismanagement of East Shore. If true, this may hint at what happened to the monies paid by Auto

---

[5] More specifically, both the vehicle titles and the leases were transferred to Lycoming Auto Trust, a Delaware trust in the business of buying cars and their related leases. *Dkt. #1*. Auto Trakk services leases for Lycoming Auto Trust in Pennsylvania. *Id.* For purposes of this action, Auto Trakk and Lycoming Auto Trust are treated as a single entity identified in both the court documents and this opinion as "Auto Trakk."

[6] The Vehicles are described in Court I on the Complaint as a 2011 Kia Optima, a 2013 Hyundai Sonata, a 2011 Hyundai Elantra, a 2010 Lincoln MKS, and a 2012 Ford Taurus. Vehicle Identification numbers are also provided for each.

Trakk that never made it into Dealer Resources' hands. Ultimately, however, this assertion has no bearing on the Court's decision in this matter.

On July 17, 2020, East Shore filed the underlying Chapter 7 case. On September 15, 2020, Auto Trakk filed this adversary proceeding styled as a "*Complaint to Determine Secured Status and Sale of Vehicles*" ("the Complaint") against the Debtor, the Trustee, and Dealer Resources. Count I of the Complaint asked this Court to "find and order Dealer Resources liens noted on the title to the Vehicles are improper and discharged." *Dkt. # 1*. This count identifies the Vehicles, all of which were purchased by Auto Trakk but for which Dealer Resources still holds title. *See* n. 6, *supra*. Count 2 of the Complaint focuses on three other vehicles which Auto Trakk purchased prepetition from the Debtor but for which title had not been transferred. However, Dealer Resources does not contest the status of those three vehicles nor does Count 2 of the Complaint address Dealer Resources. In any event, the parties conceded at trial that all issues regarding the title for the three vehicles referenced in Count 2 had been resolved. While the Complaint may be unartfully drafted, the Court interprets the remaining Count 1 as seeking a declaratory judgment that Auto Trakk purchased the Vehicles free and clear of Dealer Resources' perfected liens.

Dealer Resources' Answer consisted mainly of general denials, but it did assert (1) that the sales of the Vehicles to Auto Trakk were outside the ordinary course of business because Auto Trakk does not qualify as a "good faith purchaser" under the UCC, (2) that Dealer Resources had perfected security interests on all the Vehicles, and (3) that Auto Trakk's purchase of the Vehicles was thus subject to those security interests. On November 18, 2021, the Court conducted a bench trial on this matter after which the parties submitted post-trial memoranda which the Court has reviewed while taking the matter under advisement.

### III. LAW

Under Pennsylvania law, a "[b]uyer in ordinary course of business" is "[a] person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person … in the business of selling goods of that kind." 13 Pa.C.S.A. § 1201(b)(9). "Good faith," in this context, means "honesty in fact and the observance of reasonable commercial standards of fair dealing," *Id*. at § 1201(b)(20).

"[A] person buys goods in the ordinary course of business if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices." *Id*. at § 1201(9)(i). Finally, a buyer in the ordinary course of business "takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." 13 Pa.C.S.A. § 9320(a). *See also Nissan Motor Acceptance Corp. v. Sports Car Leasing LLC ("NMAC")*, 529 F. Supp. 3d 371, 383 (E.D. Pa. 2021) ("[I]n order to not be considered a buyer in the ordinary course of business, the buyer must not only have actual knowledge of a security interest in the goods by a third party, but must also have actual knowledge that the proposed sale to that buyer is in violation of the third party's security interest.")

In the instant case, Dealer Resources argues that Auto Trakk was not a good faith purchaser and so could not have been a buyer in the ordinary course of business. *Dkt. #28 pp. 3-4.* This argument is premised on the suggestion that Auto Trakk failed to perform due diligence that would have alerted it to Dealer Resources' position. As noted previously, however, under Pennsylvania law, it simply does not matter whether Auto Trakk had or should have had notice of Dealer Resources position when it is stipulated by the parties that Auto Trakk had no knowledge that its purchase might have violated any of Dealer Resources' rights as lienholder. And how could it?

The only violation of Dealer Resources' rights that occurred was when East Shore failed to pay it what was owed under the Dealer Resources agreement, and no evidence has been put forth to suggest that Auto Trakk was even aware of that fact let alone in any way complicit in it or responsible for it.

Dealer Resources also points to various actions by East Shore in violation of the Auto Trakk Agreement as somehow being evidence of bad faith on the part of Auto Trakk. *Id.* at p. 5. Specifically, Dealer Resources points to East Shore's failure to promptly deliver certificates of ownership to Auto Trakk after its purchase of Vehicles and that on some occasions, East Shore sold vehicles to Auto Trakk to which it had not yet acquired either title or possession. *Id. at 6.* Lastly, Dealer Resources points to Auto Trakk's choice not to inspect East Shore's books as evidence of "a studied disaffection for any inquiry." The Court fails to see why acts by East Shore which, if anything, represent breaches by it of the Auto Trakk Agreement somehow prove bad faith on the part of Auto Trakk, and the same can be said for Auto Trakk's decision not to inspect East Shore's books where such an inspection would not have revealed a violation of the Plaintiff's rights even if an inspection had occurred. None of these asserted actions or inactions by Auto Trakk serve to prove it was not a good faith purchaser.

Next, the Court notes that East Shore's "business" consisted of purchasing vehicles, acquiring agreements with consumers for the lease of those vehicles, and then selling the lease agreement and associated vehicle together to another party (in this case, Auto Trakk). At no point have there been any allegations by Dealer Resources of actual bad faith on the part of Auto Trakk in its purchase of the Vehicles beyond the assertion that Auto Trakk knew or should have known that Dealer Resources held perfected liens on the Vehicles. Nor has there been any evidence that Auto Trakk knew or should have known that East Shore would fail to use the proceeds from the

sale of the Vehicles to pay off Dealer Resources' liens on them as had been East Shore's prior business practice. Furthermore, it is expressly stipulated that Auto Trakk had no knowledge that its purchase of the Vehicles violated any of Dealer Resources' rights in them. In any case, under 13 Pa.C.S.A. § 9320(a), it simply does not matter whether Auto Trakk knew or should have known of the existence of Dealer Resources' lien or not because Auto Trakk would have taken the Vehicles free and clear of any such interest either way so long as it was a buyer in the ordinary course of business.

Considering the foregoing, the Court is satisfied that Auto Trakk has shown by preponderance of the evidence that it purchased the Vehicles in good faith, without knowledge that the sale violates any of Dealer Resources' rights as to the Vehicles, and in the ordinary course of East Shore's business, a business which included selling leased vehicles and the associated lease agreements to parties such as Auto Trakk. Accordingly, the Plaintiff took the Vehicles free and clear of Dealer Resources' liens, and those liens were then transformed by operation of law into liens on the proceeds that East Shore obtained from that sale. The fact that those sale proceeds are unaccounted for is not the fault of Auto Trakk (or, at least, Dealer Resources has never suggested that to be the case), and the loss of the sale proceeds does not reinstate the prior liens on inventory sold free and clear of them.

In reaching this conclusion, the Court is guided by *KDG Auto Sales, Inc. v. Asta Funding, Inc.*, 781 A.2d 202, 203 (Pa. Super. Ct. 2001). There, the Pennsylvania Superior Court encountered facts analogous to those before the Court. A used car dealer ("Thomas") entered into an agreement with a financer ("Portnoy") who would provide funding for Thomas to purchase vehicles for resale or consignment, with Portnoy owning the cars but with title held in Thomas's name. *KDG Auto Sales*, 781 A.2d at 202. Thomas later entered into a separate agreement with Asta Funding, Inc.

("Asta") whereby Asta would purchase retail installment contracts and security agreements for vehicles sold to consumers by Thomas. *Id.* After the sales were consummated, Asta would pay Thomas, and the individual consumer purchasers would be obligated to pay Asta per an installment contract. Portnoy took objection and transferred the titles in the affected vehicles to a third party with himself listed as first lienholder. *Id.* at 203. Later, Asta repossessed and resold two cars and collected insurance proceeds for a third that had been stolen. *Id.* Portnoy sued Asta to recover the money it had received from the auction and the insurance and obtained a jury verdict which Asta appealed. *Id.*

The Superior Court reversed, holding that Portnoy's security interest in the cars ended after they were sold to buyers in the ordinary course of business. *Id.* at 205. While Portnoy's security interest in the proceeds from the sale of those cars continued, that was a separate matter between Portnoy and Thomas. *Id. See also NMAC*, 529 F. at 383 (finding that purchases of vehicles were in ordinary course of business where sales "comported with the Dealerships' own usual or customary practice" over course of nearly two years and as such were free of liens).

Dealer Resources attempts to distinguish *KDG Auto* on the grounds that Portnoy failed to perfect his original secured lien by filing a notation of his security interest with the Pennsylvania Department of Transportation as required by 75 Pa. C.S. § 1131, whereas Dealer Resources' own liens were fully perfected. *Dkt. #28.* The Court disagrees. The central holding of *KDG Auto* was that Portnoy, the car dealership's financer, had entrusted the cars to Thomas (as "entrustment" was defined by 13 Pa. C.S. § 2403), and that authorized Thomas to sell the cars free and clear of Portnoy's liens:

> There is no question that Thomas had possession of the goods and that Portnoy was aware of that fact. In fact, the Portnoy–Thomas agreement specified the location of the cars. Although the Portnoy–Thomas agreement also specified that Thomas was not authorized to sell the cars without approval from Portnoy, entrusting occurs

> "regardless of any condition expressed between the parties ...." 13 Pa.C.S.A. § 2403(c). Thus, despite the explicit contractual language to the contrary, by permitting Thomas to possess the cars on his lot, Portnoy entrusted the cars to Thomas, and thus is bound by the provisions of 13 Pa.C.S.A. § 2403.
>
> We now turn to the effect of Portnoy's entrustment, specifically that provided in 13 Pa.C.S.A. § 2403(b). The plain language of this subsection establishes that upon entrustment, Thomas, as a merchant who deals in goods of that kind (used cars), had the power to transfer the rights of the entruster (Portnoy) to a buyer in the ordinary course of business. The consumers in this case were buyers in the ordinary course of business pursuant to 13 Pa.C.S.A. § 1201. Therefore, upon purchase from Thomas, these buyers received the ownership rights in the cars previously held by Portnoy.

*KDG Auto Sales*, 781 A.2d at 205.

The *NMAC* Court reached a similar conclusion in a case also dealing with the status of post-sale vehicle liens arising through floor-plan financing arrangements:

> Based on [§ 2403], once Nissan voluntarily delivered and entrusted the Vehicles to the Dealerships (which obviously deal in selling Nissan vehicles) and acquiesced in the Dealerships' retention of possession of the vehicles (indeed, the WSAs between Nissan and the Dealerships specified the location of the cars), the Dealerships obtained the titles to the Vehicles, despite not having any document of title and despite any reservation of a security interest by Nissan. The Dealerships were thereafter free to sell the Vehicles to a buyer in good faith. As a result, all of the titles Sports Car Leasing received were voidable, but not void.
>
> We now turn to the effect of Nissan's entrustment, specifically that provided in 13 Pa.C.S. § 2403(b). The plain language of this subsection establishes that upon entrustment, the Dealerships, as merchants who deal in goods of that kind (cars), had the power to transfer the rights of the entruster (Nissan) to a buyer in the ordinary course of business.

*NMAC*, 529 F. Supp. 3d at 382.

The Court finds a similar situation existed in the case at bar. At trial, Dealer Resources' only witness, Frank Kibler, testified at length as to the contractual requirements under which East Shore operated. Not only was Dealer Resources entitled to periodic surprise inspections to confirm that the vehicles acquired pursuant to the Dealer Resources Agreement were on the lot where they were supposed to be, East Shore was required to send Dealer Resources photographic evidence of

its possession of any vehicles which were not on the lot on the day of an inspection (for example, because they were out on a customer test drive). As in *NMAC*, Dealer Resources entrusted East Shore with the Vehicles and thus gave East Shore the power to transfer the rights of the entruster (Direct Resources) to a buyer (Auto Trakk) in the ordinary course of business.

Finally, in its post-trial brief, Dealer Resources argues that it "retains a security interest in the proceeds of the sale which Auto Trakk continues to receive through the leasing contracts it holds…" Dkt. #28. In support of this innovative interpretation of the words "proceeds of the sale," Dealer Resources cites to *Assocs. Disc. Corp. v. Old Freeport Bank,* 421 Pa. 609, 613, 220 A.2d 621 (1966). That case, however, says nothing of the sort and clearly identifies "proceeds of the sale" as the money paid by the buyer to the seller in exchange for the thing sold. Dealer Resources' lien on the proceeds of the sale did not inexplicably become a lien on lease payments made by consumers to the entity which bought both the Vehicles and the associated lease agreements free and clear. This argument is without merit.

## IV. CONCLUSION

Based on the foregoing analysis, the Court finds that the Plaintiff, Auto Trakk, has met its burden of showing itself to be a good faith purchaser in the ordinary course of business such that it took ownership of the Vehicles free and clear of Dealer Resources' liens. While it may appear unfair to Dealer Resources that the proceeds of that sale to which its liens subsequently attached are no longer available to pay their claims, the Defendant's quarrel is with East Shore and its principal, Sean Davis, not with the Plaintiff.

Despite the foregoing, the specific relief sought by Auto Trakk in the Complaint requests that the Court "find and order Dealer Resources liens noted on the title to the Vehicles are improper and discharged [sic]." The Complaint also asked the Court "to confirm the sale of the Purchased

Page 10 of 11

Case 1:20-ap-00067-HWV    Doc 29    Filed 03/11/22    Entered 03/11/22 10:45:02    Desc
Main Document    Page 10 of 11

Vehicles to the Lycoming Auto Trust." The Complaint does not seek an order compelling Dealer Resources to surrender title to the Vehicles to Auto Trakk, and so such relief is not within the Court's power at this time. If Dealer Resources refuses to transfer title even after entry of a judgment in favor of Auto Trakk, the Plaintiff will be obliged to file a separate adversary proceeding or, alternatively, to pursue state court remedies.

Judgment for the Plaintiff. A separate Order to that effect shall issue this day.

By the Court,

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: March 11, 2022

Page 11 of 11

Case 1:20-ap-00067-HWV    Doc 29    Filed 03/11/22    Entered 03/11/22 10:45:02    Desc
Main Document    Page 11 of 11